UNITED STATES S DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SYED ALI RAZA, an individual
and MED GAP, LLC, a Florida
limited liability,

        Plaintiffs,

v.                                                  Case No. 9:22-cv-81753-XXXX

FIRST ENROLL, LLC, a New
Jersey limited liability company,

        Defendant.

_____/

## COMPLAINT

Syed Ali Raza ("Mr. Raza") and MED GAP, LLC ("MED GAP") hereby bring suit against First Enroll, LLC ("First Enroll") for declaratory relief and breach of contract. In support of this Complaint, Plaintiffs state as follows:

## INTRODUCTION

1.      First Enroll is reaping an unjust windfall at the expense of Plaintiffs, insurance agents to whom First Enroll owes fully vested renewal commissions. Through considerable effort and expense, Plaintiffs sold insurance products and built a substantial book of business that generated significant income for both Plaintiffs and First Enroll, including substantial income from renewals of the insurance products sold by Plaintiffs. This was not enough for First Enroll.

2.      Rather than being content with the profits it reaped from the current and future business generated through Plaintiffs' efforts, First Enroll determined simply to take Plaintiffs' entire book of business, retaining all renewal commissions for itself. Without warning or cause, First Enroll unilaterally terminated the parties' agreements and refused to

1

pay Plaintiffs any renewal commissions earned from Plaintiffs' book of business. In so doing, First Enroll breached the parties' contracts.

## JURISDICTION AND VENUE

3.      This is an action for declaratory relief and breach of contract seeking damages in excess of $100,000, exclusive of interests and costs.

4.      Jurisdiction in this Court is proper based on diversity pursuant to 28 U.S.C. Section 1332.  Plaintiffs are citizens of Florida and Plaintiff is a foreign corporation based in New Jersey.

5.      Venue is proper in this Court pursuant to 28 U.S.C. 1391 in that several of the events giving rise to this action occurred in Palm Beach County, Florida, and/or the causes of action asserted accrued in Palm Beach County, Florida.

## THE PARTIES

6.      Mr. Raza is an individual residing in Palm Beach County, Florida.

7.      MED GAP is a Florida corporation with its principal place of business in Palm Beach County, Florida.|

8.      First Enroll is a New Jersey limited liability company with its principal place of business in Neptune, Monmouth County, New Jersey, that carries on substantial business in Florida through principals, employees, and/or agents, including through First Enroll's Agent Relations Manager, Daniel Gootner, who resides in Florida.

## GENERAL FACTUAL ALLEGATIONS

9.  In or about April 20, 2021, Plaintiffs entered into contracts with First Enroll to sell certain insurance products in exchange for commissions from First Enroll. A copy of the contract between Plaintiffs and Defendant First Enroll is attached hereto as "Exhibit A."

First Enroll possesses certain additional contracts between itself and Plaintiffs, of which Plaintiffs do not have copies.

10.     In addition to initial commission payments, First Enroll's contract with Mr. Raza requires that First Enroll pay to Mr. Raza commissions on the renewals of the insurance products he sold.

11.     As relevant here, the contract between Mr. Raza and First Enroll includes provisions which pertain to rate of compensation, payment of commissions, vesting of renewal commissions, payment of commissions earned after termination, and bases for termination.

12.     First Enroll drafted the contract at issue here which was represented by First Enroll to be identical to the agreement entered into by and between First Enroll and Jawaad Abdulaziz/Slayed Properties, Inc./JA Primary Funding Group ("Referrers").

13.     However, the contract provided to Plaintiffs was in fact different with regard to the payment terms after termination from the contract which bound First Enroll to Referrers, and these differences were not ascertainable until after Plaintiffs bound themselves online to the terms thereof.  The contract authored by Defendant is therefore one of adhesion, and is based upon misrepresentations.

14.     Further, during the parties' relationships, Plaintiffs had access to certain analytical tools available through First Enroll's website, which allowed Plaintiffs to verify sales data and the amount of initial and renewal commissions owed to them by First Enroll.

15.     On or about October 20, 2021, First Enroll unilaterally terminated its contract with Plaintiffs without cause. In particular, First Enroll's termination letter included conditions under which Plaintiffs were entitled to receive future commissions.

16.     Despite that the contracts provide that Plaintiffs possess interests in renewal commissions (See Paragraph G. Compensation), First Enroll has retained all renewal commissions, refusing to pay any of those renewal commissions to Plaintiffs.

17.     In addition, First Enroll terminated Plaintiffs' access to the analytical tools previously available to them to verify the commissions First Enroll was obligated to pay Plaintiffs.

18.     All conditions precedent with respect to the bringing of this action have been performed, waived, or excused, so that there are no unperformed conditions precedent precluding this action.

19.     Further, upon information and belief, discovery will reveal that First Enroll its principals, Isaac Cohen and/or Daniel Gootner, have committed tortious acts for which they are personally liable. Consequently, Plaintiffs reserve the right to amend their Complaint to assert claims against Isaac Cohen and/or Daniel Gootner as those facts are discovered.

## COUNTS

## COUNT I: DECLARATORY JUDGMENT

20.     Plaintiffs incorporate by reference paragraphs I through 19 as if fully set forth herein.

21.     Plaintiffs believe that they are entitled to receive commissions for renewals that have taken place and that will continue to take place following First Enroll's termination of the parties' contracts.

22.     Further, to the extent the contracts can be interpreted as allowing First Enroll, following a termination, to retain renewal commissions in which Plaintiffs have an interest, the contracts are ambiguous and should be interpreted in favor of Plaintiffs and against First

Enroll. Indeed, any other interpretation would result in an unfair windfall to defendants and a forfeiture to Plaintiffs. As explained above, First Enroll drafted the contracts at issue.

23.     First Enroll asserts that Plaintiffs are not entitled to any renewal commissions following First Enroll's unilateral termination of the contract.

24.     Based on the above disputes, Plaintiffs are in doubt as to their rights to commissions arising from renewals that have taken place and that will continue to take place following First Enroll's termination of the parties' relationships. Plaintiffs are therefore in need of a judicial interpretation of the contracts.

## COUNT II: BREACH OF CONTRACT

25.     Plaintiffs incorporate by reference paragraphs 1 through 19 as if fully set forth herein.

26.     The contract among Plaintiffs and First Enroll are valid, binding agreements, requiring First Enroll to pay to Plaintiffs renewal commissions, unless the parties' relationships were terminated.

27.     Alternatively, the contract is ambiguous as it concerns Plaintiffs' rights to renewal commissions following termination, and, as a result, the contract should be interpreted in favor of Plaintiffs and against First Enroll, which drafted the contract.

28.     Plaintiffs fully performed their obligations under the contract by, among other things, marketing and selling insurance products.

29.     First Enroll has refused to pay renewal commissions following its termination of the parties' relationships, and First Enroll has therefore breached the contract.

30.     As a result of First Enroll's breach, Plaintiffs have suffered and will continue to suffer damages, including compensatory, consequential, and special damages.

### COUNT III: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

31.     Plaintiffs incorporate by reference paragraphs 1 through 19 as if fully set forth herein.

32.     As set forth above, First Enroll breached its contract with Plaintiffs by, among other things, refusing to pay to Plaintiff renewal commissions to which they are entitled.

33.     To the extent that the contracts can be construed to provide First Enroll any discretion in the termination without cause of the parties' contracts, or in the timing and amount of the commission payments owed to Plaintiffs, First Enroll exercised that discretion in bad faith and in a manner that frustrated Plaintiffs' reasonable expectations under the contract. As explained above, First Enroll, without warning or cause, terminated the parties' contract and withheld amounts owed to Plaintiffs, and terminated Plaintiffs' access to information that was used to verify the amounts owed to them by First Enroll.

34.     As a result of First Enroll's breaches of their duty of good faith and fair dealing, Plaintiff has been damaged through First Enroll's refusal to comply with its obligations.

**WHEREFORE,** Plaintiffs request the following relief:

a.      A judicial declaration that Plaintiffs are entitled to receive renewal commissions pursuant to the parties' contracts;

b.      Damages in an amount to be determined, including, but not limited to, compensatory, consequential, and special damages, and prejudgment interest; and

c.      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

35.     Plaintiffs demands a trial by jury for all claims triable as of right.

### S I S K I N D   L E G A L , P L L C
ATTORNEYS & CONSULTANTS

_____*/s/ Jeffrey M. Siskind*_____
Jeffrey M. Siskind, Esq.   FBN 138746

3465 Santa Barbara Drive  Wellington, Florida  33414
TELEPHONE  (561) 791-9565
FACSIMILE  (561) 791-9581
Email:  jeffsiskind@msn.com

7

# EXHIBIT A

# Producer Agreement

This Appointment and Agreement (the "**Agreement**") is made by and between **First Enroll, LLC** a  New Jersey limited liability company, with an address of 3600 Route 66, Suite 150, Neptune, NJ 07753 (herein as "**FE**") and ___Ali Raza_____ [INDIVIDUAL AGENT]      ("Individual      Producer")      with      a      home      address      of ___19323 SKYRIDGE CIR BOCA RATON, FL 33433___ of ___MED GAP LLC_____ [AGENCY], ("Agency  Producer")  with  an  address  of ___7000 W PALMETTO PARK RD # 105 BOCA RATON, FL 33433___ personally, jointly and severally (Individual Producer and Agency Producer herein collectively referred to as "**Producer**"), on this day of ___4/20/2021_____ (herein as "**Contract Date**").

**A. Appointment.** FE hereby appoints Producer, as an independent contractor, to solicit, offer and sell FE's designated bundle of products and services (the "**Products**") as listed on FE's website CRM system at commission rates set forth under "administration123" thereon, as same may be amended from time to time (the "**Schedule of Commission**"), including applications for life and health insurance Products provided by FE or insurance companies ("**Insurers**") to purchasers of such Products (each, a "**Member**" and collectively "**Members**").  Producer hereby accepts the appointment and agrees in consideration of the commission(s) hereinafter provided to comply fully with the conditions and terms of this Agreement and such other rules and instructions that may be applied or heretofore established by FE or an Insurer.  Producer shall be free to exercise Producer's own judgment as to the persons solicited and the time and place of such solicitation.  Producer shall also be responsible for collecting and promptly remitting to FE or the Insurer (or its designated administrator) the initial premiums for insurance upon policies issued to Members, and in transacting such other business for FE as may be required in connection with the Products. Producer shall comply with FE's standard Terms of Use, as amended from time to time (the "**Terms of Use**").

**B. Effective Date**.  Notwithstanding the Contract Date, this Agreement shall become effective on the date that Producer has agreed to the terms and conditions if this Agreement, has completed all necessary documentation required by FE, has created an account with FE (the "**Producer Account**"), and has been finally approved and executed by FE (herein as "**Effective Date**").

**C. Independent Contractor**.   Producer acknowledges that it is conducting business for Producer's own account as an independent contractor, and not as an employee of FE and shall be responsible for payment of all applicable Federal and State taxes (including Social Security Taxes, Unemployment Taxes, and Income Taxes) and will abide by all applicable Federal, State and Local laws.

**D. Limitation of Authority.** Producer agrees and understands that it will not and cannot bind FE or any of the Insurers by any promise or agreement to incur any debt, expense or liability in its name or account, or to waive or modify any provisions of the Products. Producer shall

DocuSign Envelope ID: 5481E784-9B84-4858-A101-302419222A25

not have authority to make, alter, vary, or discharge any agreement with respect to, or extend the time payment of, any premiums; or to waive or extend any obligation or condition; or to accept premiums other than in current funds; or to incur any liability on behalf of FE or any of the Insurers ; or to knowingly deliver in any manner whatsoever any policy of insurance to any applicant or insured who is not insurable at the time of delivery; or to receive any money due or to become due to FE or an Insurer except under policies or receipts sent to Producer for collection, or to violate or contravene the Terms of Use.

E. **Exclusivity**.   To protect the integrity and reputation of FE, Producer agrees to sell only Products offered by FE to Members introduced by or belonging to FE, and Producer agrees that it will not sell to Members any products and services (such as riders, additional insurance or other service contracts) offered by companies other than FE to Members of FE.  Violation of this provision will entitle FE to terminate this Agreement immediately.  This provision shall not prevent Producer from selling any other products or services to persons who are not Members of FE.

F. **Contracting of Sub-Producers.** Producer may contract with other qualified persons (each, a "**Sub-Producer**") to solicit business on behalf of the FE and the Insurers by executing a Sub-Producer Agreement furnished by FE for such purpose and forwarding such agreements to FE for its approval, which approval may be granted or withheld in FE's sole discretion. No such contract shall be effective until such sub-Producer is properly licensed by the appropriate jurisdictional authority(ies). Producer shall be responsible for the recruitment, training and supervision of its Sub-Producers.   Producer shall be wholly and directly responsible to FE and any Insurer for any commission or premium refunds, chargebacks, reversals and similar amounts payable by the Sub-Producer, and shall indemnify, defend and hold harmless FE or any Insurer from any claims, actions, losses or damages caused by the Sub-Producer as if caused by the actions or inactions of Producer. Producer may terminate one or more of its Sub-Producers' appointments by immediately forwarding to FE all notice(s) of termination. Producer shall be obligated to terminate promptly the appointment of any Sub-Producer when requested to do so by FE or an Insurer.

G. **Compensation.**

  a. Producer agrees that the first year and renewal commission(s) set forth in the Schedule of Commission or otherwise payable under this Agreement shall be accepted as full and total compensation for Producer's services and for all right, title and interest in the Member business placed by Producer hereunder.

  b. Producer is wholly responsible for ensuring that payment details are up to date in its Producer Account and in the official FE records, including postal and email addresses, name, payment information, or any other personal information that will impact the ability to make payments to Producer. FE is not responsible for lost/stolen payments. Failure to provide current information may result in forfeiture of any payments due to Producer. Payments that are left unclaimed or are returned for invalid or insufficient address information or for other reasons may be forfeited, as

well. It shall be the Producer's responsibility to review and audit all compensation payments. Producer is required to notify FE of any errors or inaccuracies as soon as reasonably possible, but no later than seven (7) calendar days after payment is made by FE. It is agreed that after 7 calendar days, all payments are irrevocably final and become full and complete satisfaction of payment and shall not be eligible for Producer to contest.

c.  Producer agrees that this Agreement is executed subject to the right of FE and the Insurers to revise the Schedule of Commission at any time or to discontinue any plan of insurance or annuity or other Product; provided, however, that any such changes to the Schedule of Commission shall apply only to new business written subsequent to the date of change.

**H. Assignment.** No assignment, transfer or disposal of any interest that Producer may have in the appointment under this Agreement, commissions arising hereunder or business secured by Producer hereunder shall be made without the written consent of FE, which consent may be granted or withheld in FE's sole and absolute discretion.  Any attempted or purported assignment, transfer or disposal made without the consent of FE shall be void and shall be a violation of this Agreement entitling FE to the immediate termination hereof.

**I. Fiduciary Responsibility, Non-interference with Member Relationships.** Producer will be responsible as a fiduciary to FE and the Insurer for all monies, premiums, policies and other documents entrusted to it , and Producer agrees to return such materials to FE or the Insurer upon demand, and all policies or renewal receipts sent to Producer on which premiums have not been paid; and all monies collected by Producer under the terms of this Agreement shall constitute documents and funds held **in trust**, separate and distinct from Producer's other funds and not subject in any manner whatsoever to personal or other use by Producer , and such monies shall be immediately remitted to FE or the Insurer.  Producer agrees not to withhold any funds or property of FE or the Insurer and further agrees not to rebate or offer to rebate all or any part of the premium on a policy of insurance (unless expressly permitted by state statutes, FE and the Insurer) issued or to be issued by the Insurer.  Producer agrees not to induce or endeavor to induce any Member to discontinue the payment of premiums or to relinquish any policy issued by an Insurer, and further agrees not to induce or endeavor to induce any other person conducting business with FE or an Insurer to leave the employment or service thereof.  Producer further agrees not to violate any insurance law of the federal, state or local government.  Any violation of any of the foregoing covenants and agreements, at any time, the same shall immediately operate as a breach of this Agreement and Producer shall forfeit any and all commissions, fees or other benefits of this Agreement that might have been payable otherwise.

**J. Territory.** Producer is authorized to operate under the terms of this Agreement only in the territory designated by FE on <u>Schedule A</u> attached hereto (the "**Non-Exclusive Territory**"), which Non-Exclusive Territory is <u>not</u> exclusively assigned to Producer. It is further agreed that FE or Company may retire from the Non-Exclusive Territory or any other territory, and

may, at its discretion, discontinue or withdraw any Products or forms of policies from the Producer in the Non-Exclusive Territory or any other territory without prejudice to the right of FE or any Insurer to continue said forms in the Non-Exclusive Territory or in any other territory.

**K. Indemnification**. Producer and its principals shall indemnify, defend and hold FE and the Insurers , their employees, agents, officers and assigns harmless from any and all expenses, costs, attorney's fees, causes of action, regulatory violations, and damages resulting in whole or in part, from any unauthorized, illegal or wrongful  act personally committed by Producer or from any unauthorized, illegal or wrongful act of a Sub-Producer which was recruited by or assigned to Producer, or arising from any violation of this Agreement or the Sub-Producer Agreement.

**L. Correspondence and Reports.** Producer agrees to remit any and all reports and to send all applications and correspondence relating to the Members and Products to the office of FE unless otherwise instructed in writing by FE. Producer and its affiliates also agree to accept by facsimile, electronic mail and/or any other method of communication at any number or address currently on file and any number or address subsequently obtained by FE from Producer all correspondence, including materials containing commercial advertisements, from FE and any of its affiliates.

**M. Override Allowance**. The override allowance on first year and renewal commissions of Producer on business personally produced or produced by Sub-Producers appointed by or assigned to Producer will be the difference between the first-year commission or renewal commission payable to the Producer and that payable to a Sub-Producer.

**N. Premium Refund, Chargebacks, Returns, Reversals, etc.** Should FE or an Insurer find it necessary to return the premium or any portion thereof on a policy for any reason, at their discretion, Producer agrees to return to FE or the Insurer, on demand, any and all commissions received on said premium and further agrees not to withhold any funds, policies or receipts belonging to the Insurer or due to a person whose application for insurance has been declined.  No compensation shall be payable on any Products not accepted by the applicant or Member or on any Product sales, membership or participation declined by FE. Notwithstanding any provision herein, no commission payments shall be payable in respect of any Product sales in which, regardless of the amount of time that has passed (i) a Member returns or cancels the Product; (ii) a bank, credit union, credit card company, PayPal, or payment system reverses a Member's charges in respect of a sale; or (iii) FE reverses the sale of a Product at its sole discretion, including, but not limited to instances in which FE suspects, or has reason to suspect the use of false information, fake or stolen credit cards, or where FE suspects or has reason to suspect that sales were made in violation of FE's standard Terms of Use or in violation of this Agreement (any of the foregoing being a "**Reversal**"). In the event FE has already made payments to Producer in respect of any Reversal, FE will, at its election, offset an amount equal to such payments from future payments to Producer, or require that Producer repay FE an amount equal to the payments made to Producer in respect

of such Reversals. Producer agrees to repay such amount within five (5) business days of FE's demand. FE may offset any indebtedness by Producer against commission or any form of compensation. Interest on any unpaid balance shall be 1% per month. Collection fees on unpaid debits to FE shall be charged to Producer, and all collection costs shall be borne by Producer.  Producer shall be wholly and directly liable to FE and any Insurer for Reversals, costs and fees owed by its Sub-Producers.  Should the rate of monthly Reversals divided monthly charges as determined by FE in its own discretion from time to time (the "Chargeback Rate") exceeds one percent (1%), FE shall have the right to withhold ten percent (10%) of the Producer's Account as a reserve fund (the "Reserve Fund") and to withhold the Reserve Fund until such time as the Chargeback Rate has been below one percent (1%) for a period of three (3) consecutive months, at which time the Reserve Fund shall be released. Should the Chargeback Rate remain above one percent (1%) for three (3) consecutive months, Producer shall forfeit the Reserve Fund and shall be entitled to no payment thereon, as compensation to FE as liquidated damages for FE's managerial services and losses in connection with Producer's Reverses and not as a penalty.  Should the Chargeback Rate at any time exceed one and six tenths percent (1.6%) and is not reduced to less than one percent (1%) within thirty (30) days, FE may terminate this Agreement immediately and Producer shall forfeit all commissions, including all sums in the Producer Account and the Reserve Fund, if any.

O. **Payment of Commissions after Termination of Agreement.**    If this Agreement is terminated for any reason by FE or Producer, either with cause or without cause, all commission payments to Producer will cease to be paid upon the effective date of the termination and any unpaid or future commissions will be deemed forfeited by Producer to FE as liquidated damages for FE's loss of anticipated profits due to such termination and not as a penalty.

P. **Death of Producer.**  Where Producer is an natural person, on the death of Producer this Agreement will be immediately terminated and there will be no further payment of commission unless, within sixty (60) days of the date of death, the personal representative of Producer designates a replacement producer who is fully licensed, acceptable to FE, who joins in this Agreement, and will service the Members on an ongoing basis (the "**Successor Producer**").  All commission payments to Producer will cease to be paid upon the effective date of death and, unless a Successor Producer is appointed within such time period, any unpaid commissions or future commissions will be deemed forfeited by Producer to FE.

Q. **Offset for Indebtedness.** FE or the Insurer shall have the right to deduct from commissions payable to Producer hereunder any indebtedness due at any time from Producer to FE or the Insurer. It is expressly understood and agreed that any such indebtedness represents a personal obligation, and recovery of such indebtedness shall not be limited to commissions earned by Producer. Unless inconsistent with state law, FE or the Insurer may deduct all renewal licensing fees, appointment fees or similar fees and charges advanced by FE for Producer's benefit from the Producer Account as they become due unless Producer has

requested in writing that the payment for the fee be handled in another manner.

**R. Advertising.** FE or the Insurers may, in their discretion, furnish Producer with supplies of sales aids. Producer shall have no power or authority to, and hereby agrees not to, modify any such sales aids, or issue or circulate any advertising material, including web site or internet, circular or pamphlet relating to FE or any Insurer or to any Products unless FE has given prior written approval to the modification or use such material.  Producer shall comply with all current and subsequently passed federal and state laws regarding the dissemination of advertising, including, but not limited to, laws and regulations regarding facsimiles, telephones and electronic mail.

**S. Competitive Endeavors.** Producer hereby agrees for the duration of Agreement and for a period of twenty-four (24) months after the termination of this Agreement for any reason thereafter, Producer shall not directly or indirectly contract with or solicit any FE contracted employees, Producers, Insurers or Members in any manner whatsoever to cease performing services for such entity, or to perform services for Producer or any affiliated person or entity. In addition, for the duration of this Agreement, and for a period of twenty-four (24) months after the termination of this Agreement for any reason, and at any location, Producer shall not directly or indirectly engage in, become a partner or investor in or otherwise own, establish or operate any entity engaged in the selling of products substantially similar to the Products or operating in a manner substantially similar to that of FE.  Producer also agrees to treat as strictly confidential all information, client lists, business plans, financial information and other information and materials of FE, including the terms of this Agreement, and not to disclose same unless compelled to do so by law.  Producer represents that it has skills adequate to allow it to operate and earn a living while maintaining strict compliance with the foregoing agreements.  In the event that a court of competent jurisdiction shall determine that the foregoing agreements are excessive as a matter of law, such court shall have the ability to modify or limit the agreements to make them enforceable to the maximum degree of allowable protection of FE. In the event that Producer shall have violated or appear to have violated the terms of these agreements, FE shall be entitled to seek injunction or other equitable relief at the cost and expense of Producer, and the time period during which these agreements apply shall be tolled for the duration of such enforcement.

**T. Producer Regulatory Compliance.**  Producer shall be at all times familiar with and responsible for maintaining its business practices within proper compliance limits:

    a.  In the conduct of Producer's business and in the performance of its obligations under this Agreement, Producer shall comply with all applicable statutes ordinances, rules and regulations of any and all federal, state, and municipal regulatory authorities and expressly the privacy and security requirements of the Gramm-Leach-Bliley Act ,the Health Insurance Portability and Accountability Act, the Fair Credit Reporting Act, and all other applicable federal and state laws and regulations respecting the privacy and security of customer/consumer personal information to the extent applicable.

    b.  Compliance with FTC Advertising Rules. Without limitation of any provision

hereunder, FE intends to treat its clients and customers fairly and comply fully with all Federal Trade Commission's regulations related to advertising. As such, Producer is required to comply with these regulations. This includes, but is not limited to, Federal Trade Commission 16 CFR Part 255: Guides Concerning the Use of Endorsements and Testimonials in Advertising, which requires, among other criteria, that material connections between advertisers and endorsers be disclosed. This means that directories, review/rating sites, blogs and other websites, email or collateral that purport to provide an endorsement or assessment of an advertiser must prominently disclose financial or in-kind compensation as provided from the advertiser. Producer is advised to seek and obtain legal advice on how these rules apply to Producer or other promotional activities for which Producer receives compensation. FE reserves the right to withhold Payments and/or cancel the Producer Account for failure to comply with the mentioned guide or other FTC regulations.

c. Email Marketing. The CAN-SPAM Act establishes national standards for commercial email. Referrals must comply with the regulatory standards of the CAN-SPAM Act, including, without limitation: (1) emails must contain a visible and operable unsubscribe mechanism which must be functional for at least 30 days after the email is sent; (2) consumer opt-out requests must be honored within 10 days; (3) emails must contain an accurate from line including friendly forms; (4) emails must contain a non-deceptive, relevant subject line relative to the offer in the email body; (5) emails must contain a legitimate physical address of the publisher and/or the advertiser; (6) emails cannot be sent through an open relay or to a harvested email address, and (7) the sale or transfer of an email address after an opt-out request is prohibited.

d. Telemarketing. Referrals utilizing outbound telephone calls for marketing purposes must comply with the Telephone Consumer Protection Act and the Truth in Caller ID Act, including, without limitation: (1) referral must obtain the consumer's consent in order to conduct outbound telemarketing and (2) referral must not participate in caller ID spoofing.

e. Privacy. Pursuant to the provisions of the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), Producer and Sub-Producer shall abide by the terms of a business associate agreement as follows:

***Business Associate - Confidentiality of Protected Health Information ("PHI") and Non-Public Personal Information ("NPI"). Producer shall protect the privacy of PHI and NPI, as defined below.***

1) *Definitions.*

a. *"Covered Entity" means the insurer(s) for whom FE manages coverage.*

b. *"Disclose" or "Disclosure": means the release, transfer, provision of access to, or divulging in any other manner of information outside the entity holding the information.*

DocuSign Envelope ID: 5481E784-9B84-4858-A401-302419222A25

c. *"Individual" shall have the same meaning as in 45 C.F.R. 164.501 and shall include a person who qualifies as a personal representative in accordance with 45 C.R.F. 164.502(g).*

d. *"Individually identifiable health information" is health information, including demographic information, collected from an individual, that:*

    i. *Is created or received by a health care provider, health plan, employer, or health care clearinghouse;*

    ii. *Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and*

    iii. *Either identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual.*

e. *"Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and part 164, Subparts A and E.*

f. *"Protected health Information" ("PHI") shall have the same meaning as used in 45 C.F.R. 164.501, limited to the information created or received by Producer from or on behalf of Covered Entity or FE.*

g. *"Non-public Personal Information" ("NPI") shall have the same meaning as used in 15 U.S.C.A. 6809(4).*

h. *"Required By Law" shall have the same meaning as the term "required by law" in 45 C.F.R.; 164.501.*

i. *"Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.*

j. *"Security Rule" shall mean the Security Standards for the Protection of Electronic Protected Health Information at 45 C.F.R. Part 164, Subpart C.*

k. *Terms used, but not defined, shall have the same meaning as given in the Privacy Rule and/or the Security Rule.*

2) *General Obligations and Activities of Producer. Producer shall not use or disclose PHI or NPI other than as permitted or required by this agreement or as required by law. Producer may use or disclose PHI or NPI only to the extent minimally necessary to perform the specific services or duties for which Producer is retained. Use or disclosure by Producer may not violate the Privacy Rule if the same use or disclosure would be made by the Covered Entity. Producer may use PHI received or created by Producer if necessary, for proper management and administration of Producer's business or to carry out Producer's legal responsibilities.*

3) *Other Obligations. At all times Producer agrees:*

a. *Not to use or disclose PHI or NPI for any purpose other than to perform the services for which Producer has been engaged by FE or as required by law;*

b. *To use appropriate safeguards to prevent the use or disclosure of PHI or NPI other than as provided for by this agreement;*

c. *To use or disclose only the minimum PHI or NPI necessary in the performance of Producer's services;*

#11647556.11(153811.005)

DocuSign Envelope ID: 5481E791-9B84-4858-A101-302419222A25

d. *To mitigate, to the extent practicable, any harmful effect that is known by Producer of a use or disclosure of PHI in violation of this agreement;*

e. *To report to FE any use or disclosure of PHI or NPI not in accordance with this agreement of which Producer becomes aware;*

f. *To ensure that any subcontractor to whom Producer provides PHI or NPI agrees to the same restrictions and conditions that apply to Producer;*

g. *To provide FE access, at its request, to any PHI received, created or obtained by Producer in order to allow FE to meet contractual requirements to the Covered Entity or as otherwise required by law;*

h. *To make any amendments to PHI that the Covered Entity or FE directs or agrees to at the request of the Covered Entity or individual;*

i. *To document such disclosures of PHI and related information as would be required of Covered Entity in order to respond to an accounting of disclosures to an individual under the Privacy Rule;*

j. *To provide to FE the information necessary in order for FE or the Covered Entity to provide an accounting of the PHI in accordance with the Privacy Rule;*

k. *Not to use or disclose PHI or NPI for any marketing purposes, whether done by Producer or any other person or entity; and*

l. *To make Producer's internal practices, books, and records relating to the use and disclosure of PHI available to the Secretary for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.*

4) *Safeguards.*

a. *Producer will implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity Other Obligations and availability of Electronic-PHI that it creates, receives, maintains or transmits on behalf of FE or Company.*

b. *Producers and Subcontractors. Producer will ensure that any Producer, including a subcontractor, to whom Producer provides Electronic PHI agrees to implement reasonable and appropriate safeguards to protect such information.*

c. *Security Incidents. Producer will orally report to FE any Security Incident of which it becomes aware within 48 hours and will confirm such report in writing, by facsimile, within five business days of the Security Incident.*

5) *Termination of the Producer Agreement. The terms of this paragraph(s) of the Producer Agreement shall continue until all of the PHI or NPI provided by FE to Producer, or created or received by Producer in performing Producer's services under its agreement with FE is destroyed or returned to FE, or, if it is infeasible to return or destroy PHI or NPI, protections are extended to such information, in accordance with the termination provisions below.*

6) *Termination. Upon FE's knowledge of a material breach of the terms of this agreement, FE may:*

a. *Terminate the Producer's agreement with FE and any other agreements between FE and Producer if Producer does not cure the breach or end the violation within the time specified in a written notice from FE; or*

#11647556.11(153811.005)

    b.  *Immediately terminate the Producer's agreement with FE and any other agreement between FE and Producer if cure by Producer is not possible.*

    7)  *Obligations upon Termination of the Producer's Agreement with FE.  Upon written notice from FE to Producer that FE is terminating the Producer's agreement with FE, Producer shall either destroy or return all PHI or NPI that Producer has received from FE or that Producer created in performing its services under the Producer's agreement with FE within 3 business days. Producer shall retain no copies of such PHI or NPI.  If Producer determines that returning or destroying the PHI or NPI provided to Producer by FE is infeasible, Producer shall extend the protections of this agreement to, and comply with its obligations under this agreement regarding the PHI or NPI and not make any further use or disclosure of the PHI or NPI, so long as Producer maintains such PHI or NPI. Producer shall provide written notice to FE of the conditions that make return or destruction of the PHI or NPI infeasible.*

    8)  *Indemnification. Producer agrees to indemnify and hold harmless FE and Covered Entity from and against claims, damages, losses, costs and expenses, including but not limited to attorney's fees, arising out of or resulting from Producer's or Producer's subcontractor's acts or omissions in protecting the privacy of PHI or NPI or from Producer's breach of terms of this paragraph(s), or from the acts of anyone directly or indirectly employed by them or whose acts in relation to PHI or NPI they may be liable.*

    9)  *Construction. Any ambiguity in this agreement shall be construed so that the meaning is consistent with the requirements of the Privacy Rule and/or the Security Rule.*

**U.  Termination of Agreement**.

    a.  This Agreement may be terminated:

        i.  By either party upon 10-day written notice and mailed to the last known address; or

        ii.  Automatically, if Producer's license to solicit insurance or annuity business, or its permission to do so on behalf of any Insurer expires or is terminated; or

        iii.  Immediately by FE for cause. "Cause" shall mean violation of exclusivity as described in Section E above, excessive chargebacks as described in Section N above, misappropriation of funds, willful fraud, actions or inactions subjecting FE or any Insurer to regulatory fines, penalties, suspensions or revocations of licenses, violation of any criminal or insurance law or the material breach of the terms of this Agreement by Producer; or

        iv.  In accordance with the other provisions of this Agreement.

    b.  Upon termination of this Agreement for any reason, Producer shall have no further authority to operate on behalf of FE or any Insurer under this Agreement or

DocuSign Envelope ID: E481E791-9B84-4858-A401-302419222A25

otherwise, and payment of all commissions to Producer shall stop immediately and Producer shall be obligated to immediately repay all sums owed to FE under this Agreement or otherwise, including but not limited to FE's administrative, accounting and legal charges connected with the termination of this Agreement and the closure of the Producer Account, and FE is specifically authorized to offset or debit the Producer Account to the extent of present and future commissions, and Producer shall have no further right to any payments under this Agreement, all of which shall be deemed forfeited as liquidated damages for FE's loss of anticipated profits due to such termination.

c. Upon termination, Producer shall have thirty (30) days to remit in cash all monies owed to FE under this Agreement or otherwise, and shall return to FE all rate books or other supplies that may be the property of FE or an Insurer.

d. Upon termination of this Agreement for loss of license as described above, if Producer's license shall have been renewed or reinstated within fourteen (14) days of loss, this Agreement shall be restored and shall be effective as it was prior to such termination.

e. Upon termination of FE's agreement with any Insurer or withdrawal by FE from the Non-Exclusive Territory, this Agreement shall not terminate but shall continue in force and effect with the Insurer substituted as FE thereunder until the Insurer has appointed a successor to FE, whereupon such successor shall be substituted as FE hereunder. Notice of termination or other communications may be delivered in person by telegram, electronic mail, courier services or by mail deposited in the U.S. Mail to Producer at its last known address.

**V. Release**. To induce FE to enter into this Agreement, Producer represents that it has released, and hereby does release, discharge and acquit FE and its directors, shareholders, agents and employees (collectively, "**Releasee**"), of and from any and all claims of every type, kind, nature, description or character (collectively, "**Claims**") previously existing, now existing or hereafter arising, whether known or unknown, under or in connection with this Agreement and Releasee's performance or non-performance hereof, or from any other agreements or relations between Producer and Releasee, including Claims presently unknown. Prior to final payment following termination of this Agreement, FE shall require release of Claims from Producer on a form acceptable to FE.

**W. Modification of Agreement.** FE has the unilateral right to modify the Schedule of Commission prospectively for new sales. FE also has the unilateral right to modify this Agreement due to legislative, regulatory and/or other requirements. All modifications shall become effective upon the date listed in the modification or upon the date such modification is mailed to the last known address of Producer, whichever is most recent. Any other modifications shall require the assent of Producer which shall be deemed given if Producer does not object to any proposed modification in writing within five (5) days of receipt of notice of the modification.

DocuSign Envelope ID: E481E794-9B84-4858-A401-302419222A25

**X. Miscellaneous.**   Producer agrees that it has had the opportunity to have this Agreement reviewed by counsel of its choosing before execution, and has signed this Agreement in full knowledge and understanding as to its provisions.  This Agreement reflects the negotiated terms between the parties and in the interpretation of this Agreement, the rule that ambiguities be construed against the drafter shall not be applied.  Any provisions of this Agreement which by their terms contemplate surviving the termination of this Agreement shall so survive. The entire Agreement between Producer and FE is set out herein, and this Agreement supersedes any and all previous agreements between Producer and FE, whether written or oral. If any portion or provision of this Agreement shall be held void or unenforceable, the remaining portions and provisions of this Agreement shall remain in effect. This Agreement shall be binding on the successors and assigns of the parties. This Agreement shall be construed in accordance with the laws of the State of New Jersey, and any enforcement action hereunder shall be brought in the Superior Court of New Jersey sitting in Monmouth County, New Jersey.  INDIVIDUAL PRODUCER AND AGENCY PRODUCER ARE PERSONALLY, JOINTLY AND SEVERALLY LIABLE HEREUNDER.

X   I have read and understand the First Enroll Agent Training Manual and First Enroll's policies and procedures. I agree to abide by all First Enroll policies and procedures as well as all state and local laws and industry regulations.

Executed this day of 4/20/2021 _____

| Ali Raza | Management: First Enroll |
| Individual Producer Name | First Enroll Representative Name |
| | |
| Individual Producer Signature | First Enroll Representative Title |
| | |
| Ali Raza | Manager |
| Agency Producer Name | First Enroll Representative Signature |
| | |
| Agency Producer Signature | |

#11647556.11(153811.005)

DocuSign Envelope ID: E481E794-9B84-4858-A401-302419222A25

## Schedule A

Non-Exclusive Territory

Territory to be determined based on licensure and appointment with each insurance company.